MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2013 ME 47
Docket:        Yor-12-312
Submitted
 On Briefs:    January 31, 2013
Decided:       May 16, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
               JABAR, JJ.

CHERON DOSTANKO

v.

ANTHONY M. DOSTANKO

LEVY, J.

[¶1]  Anthony M. Dostanko appeals from a judgment of the District Court (Springvale, *Driscoll, J.*) finding him in contempt; ordering him to pay child and spousal support arrearages, a compensatory fine, and Cheron Dostanko's attorney fees, together totaling $46,272.45; and ordering his imprisonment unless he purged his contempt by paying that sum within sixty days.  We affirm the judgment with respect to the finding of contempt and the order to pay arrearages, a compensatory fine, and attorney fees, but we vacate the judgment with respect to the court's order of coercive imprisonment and remand for further proceedings as to that issue.

I.  BACKGROUND

[¶2]  Anthony and Cheron Dostanko divorced in Connecticut in November 2005.  In early 2008, Anthony and Cheron registered their Connecticut divorce

2

judgment in Maine, pursuant to 19-A M.R.S. § 1765 (2012). In May 2008, both parties moved to modify the divorce judgment. Following entry of an interim child support order and mediation, the parties stipulated to a modification of the divorce judgment in October 2008. The modified divorce judgment required Anthony, who the record shows receives approximately $62,000 in annual pensions and annuities, to (1) pay Cheron weekly spousal support until November 9, 2010, (2) pay weekly child support, and (3) recalculate child support and file a motion to modify his child support obligation within thirty days of becoming employed prior to January 1, 2009.

[¶3] Anthony became employed in October 2008 at about the same time, or shortly after, the stipulated modification of judgment was entered. He did not, however, file a motion to modify his child support obligation at that time. Anthony's 2009 tax return indicates that his gross income for 2009 was approximately $99,000. The record indicates that Anthony earned between $28,000 and $37,000 per year from different employers from October 2008 until April 2011, in addition to his income from pensions and annuities.

[¶4] In July 2011, Cheron filed a motion for contempt. In October 2011, Anthony filed the motion to modify the child support that he was required to file soon after he became employed in October 2008. After a two-day hearing, the

court concluded in an order dated May 29, 2012,[1] that Anthony had violated the divorce judgment as modified, because he owed $26,937 in past-due child and spousal support, and because he had failed to move the court to modify his child support obligation after becoming employed in 2008.

[¶5]  The court found that if Anthony had made a timely motion to modify his child support obligation, he would have owed an additional $9537 in child support.  The court arrived at this figure by applying the child support guidelines to Cheron and Anthony's annual gross incomes for the relevant time period, October 2008 to March 2012.  *See* 19-A M.R.S. § 2006(1) (2012).  The court found that Anthony had an annual gross income of $99,000 during this period, based on his reported gross income of $99,000 in 2009 and his failure to "present credible evidence that his income declined in 2010 and 2011."  The court added the additional $9537 in child support that Anthony would have paid to his $26,937 in actual arrearages for spousal and child support, and concluded that it "results in a final adjusted arrearage of $36,474 as of March 8, 2012."

[¶6]  The court then found by clear and convincing evidence that Anthony "has failed and refused to pay $36,474 as ordered, despite the ability to do so during all or portions of the non-payment period."  Based on this finding, the court

---

[1]  The court issued a corrected order on June 8, 2012, because of a clerical error.

4

found Anthony in contempt. It ordered Anthony to pay $9798.45 of Cheron's attorney fees as a remedial sanction pursuant to M.R. Civ. P. 66(d)(3)(C). The court then ordered that Anthony be incarcerated for sixty days, pursuant to M.R. Civ. P. 66(d)(3)(A), but suspended that order, allowing Anthony to purge himself of contempt by paying the entire $46,272.45 he owed within sixty days. Anthony appeals.

## II. DISCUSSION

[¶7] Anthony contends that the court erred by (A) concluding that he owed Cheron $9537, the amount of additional child support he would have had to pay had he moved to modify his child support obligation when he became employed; (B) ordering him to pay $9798.45 of Cheron's attorney fees; and (C) ordering that he be incarcerated for sixty days unless he purged his contempt by paying the entire $46,272.45 he owed. We consider each argument in turn.

A.  The Order to Pay Cheron the Additional $9537 She Would Have Received for Child Support Had Anthony Complied with the Divorce Judgment

[¶8] Anthony contends that (1) the court did not have the authority to order him to pay Cheron the amount of child support he would have had to pay had he complied with the divorce judgment; and (2) even if the court did have the authority, it based its calculation of that amount on an erroneous finding as to his gross income.

### 1.      The Court's Authority

[¶9]  Pursuant to M.R. Civ. P. 66(d)(3)(C), when a person's contempt causes another person loss or injury, "the court may enter judgment in favor of the person aggrieved for a sum of money sufficient to indemnify the aggrieved party."[2]  *See also Gillman v. Dep't of Human Servs.*, 1998 ME 122, ¶ 11 n.6, 711 A.2d 154 ("[A] court's contempt powers are inherent, and are in addition to the contempt powers provided in the child support statute.").

[¶10]  Here, Cheron asked the court to find Anthony in contempt because he failed to comply with a court order requiring him to file a motion to modify his child support within thirty days of finding employment.[3]  Cheron's motion also stated that Anthony's failure to comply with the order caused her injury because she "would have received substantially more in child support" had Anthony

---

[2]  The rule provides:

> (C) *Compensatory Fine*.  In addition to, or as an alternative to, sanctions imposed under subparagraph (A) or (B) of this paragraph, if loss or injury to a party in an action or proceeding has been caused by the contempt, the court may enter judgment in favor of the person aggrieved for a sum of money sufficient to indemnify the aggrieved party and to satisfy the costs and disbursements, including reasonable attorney fees, of the aggrieved party.

M.R. Civ. P. 66(d)(3)(C).

[3]  The parties stipulated to this requirement and the court adopted it.  However, the requirement was potentially problematic because it required Anthony to recalculate his child support and file a motion to modify his obligation without knowledge of Cheron's income and, therefore, without knowledge of whether a modification was warranted and, if so, in what amount.  When a court seeks to ensure that a payor of child support will notify the payee when the payor becomes employed, or vice versa, it need not mandate that either party file a motion to modify.  Instead, the court may order the unemployed party to submit periodic affidavits to the other party, signed under oath and setting forth information regarding employment status and income.

6

complied. The court agreed, and as such, M.R. Civ. P. 66(d)(3)(C) authorized it to order Anthony to pay Cheron a sum to compensate her for the amount she would have received had Anthony complied with the divorce judgment.

[¶11] Anthony contends, however, that the $9537 was not a compensatory fine pursuant to M.R. Civ. P. 66(d)(3)(C), but an impermissible retroactive modification of child support. In *Wood v. Wood*, 407 A.2d 282, 287 (Me. 1979), we determined that retroactive modifications of child support are generally impermissible because they encourage self-help, discourage the filing of motions to modify, and do not provide adequate notice to the party who will be financially disadvantaged by the modification. However, we also recognized two exceptions: a court may modify child support retroactive to the date the custodial parent was relieved of the support obligation or to the date a party filed a motion to modify. *Id.* at 287-88. We reasoned that retroactive modifications of child support may be appropriate to prevent one party from receiving a windfall, or in circumstances that do not implicate the issues of self-help or notice. *Id.* at 288.

[¶12] Anthony's contention that the court's order constituted an improper retroactive modification of child support is unpersuasive for two reasons. First, although the court classified the amount Anthony owed Cheron as part of his support arrearage rather than as a compensatory fine for contempt, the error was one of nomenclature and was harmless, given that the order came on Cheron's

motion for contempt and the court made the findings necessary to justify a compensatory fine pursuant to M.R. Civ. P. 66(d)(3)(C). Second, the court's order does not implicate any of the concerns we identified in *Wood*. The modified divorce judgment gave Anthony notice that his support obligation would increase upon his finding employment prior to a date certain. In fact, if courts were precluded from ordering compensatory fines in these circumstances, it would implicate the very concerns we identified in *Wood* by encouraging self-help and discouraging motions to modify. It would also create a perverse incentive for child support obligors to disobey court orders and skirt their responsibilities to their children, in contravention of the purposes inherent in the child support statute. There can be no issue of inadvertence or forgetfulness here; contemporaneously with or soon after Anthony's agreement to modify the divorce judgment if he became employed, he actually did become employed.

[¶13] Thus, the court properly exercised its contempt authority to order Anthony to pay Cheron a compensatory fine equal to the amount of child support she would have received had Anthony complied with the divorce judgment by filing a timely motion to modify.

2. Anthony's Gross Income

[¶14] We will uphold a court's finding of a party's gross income if record evidence supports the finding. *See Ellis v. Ellis*, 2008 ME 191, ¶ 23,

962 A.2d 328. For purposes of calculating child support, "[g]ross income may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity." 19-A M.R.S. § 2001(5)(D) (2012).

[¶15] Here, the court found that for the purpose of computing Anthony's child support obligation, his annual gross income during the relevant period was $99,000, and the record supports that finding. There was competent evidence showing that Anthony had actual earnings of $99,000 in 2009, and similar earnings in 2010 and the first part of 2011. The court, which had the opportunity to view Anthony in person and assess his veracity, did not find credible the evidence supporting Anthony's claims that his income declined after 2009 and that a back injury left him unable to work after April 2011. *See Wong v. Hawk*, 2012 ME 125, ¶ 16, 55 A.3d 425 (noting "the fact-finder's superior position to evaluate the credibility and good faith of the parties" (quotation marks omitted)). The record evidence permitted the court to also infer that Anthony's annual earning capacity remains $99,000, and to treat that amount as his gross income for purposes of calculating his child support obligation. *See* 19-A M.R.S. § 2001(5)(D).

[¶16] Because the record supports the court's finding that for the purposes of calculating child support, Anthony had an annual gross income of $99,000 for

the relevant time period, the finding was not clearly erroneous. *See Ellis*, 2008 ME 191, ¶ 23, 962 A.2d 328. We are not persuaded by and do not separately address Anthony's related argument that the court erred in concluding that he had the present ability to comply with the divorce judgment.

B.    Attorney Fees

[¶17]    Anthony contends that the court erred by requiring him to pay $9798.45 of Cheron's attorney fees because (1) the award did not consider the parties' relative capacity to absorb the costs of litigation, and (2) the fees were unreasonable.

[¶18]    There is no merit to Anthony's first contention. Although a court must consider the parties' relative capacity to absorb the costs of litigation when awarding attorney fees pursuant to 19-A M.R.S. § 105 (2012), *see Nadeau v. Nadeau*, 2008 ME 147, ¶ 59, 957 A.2d 108, we have recognized no such requirement when a court awards attorney fees as a compensatory fine pursuant to M.R. Civ. P. 66(d)(3)(C). Nor would it make sense to impose such a requirement, because the purpose of a compensatory fine pursuant to M.R. Civ. P. 66(d)(3)(C) is to make the injured party whole.

[¶19]    Nor were the attorney fees unreasonable. Cheron's attorney submitted a fee affidavit detailing his hourly rate and the work involved. *See Miele v. Miele*, 2003 ME 113, ¶ 17, 832 A.2d 760. Because the hourly rate and number

10

of hours were not, as a matter of law, excessive, we defer to the court's implicit finding that they were reasonable. *See Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 17, 982 A.2d 339; M.R. Civ. P. 52(b).

C.     Coercive Imprisonment

[¶20]  The court ordered Anthony's incarceration, to be suspended only if he purged his contempt by paying Cheron and her attorney $46,272.45, which represented $26,937 in support arrearages, $9537 as a compensatory fine, and $9798.45 in attorney fees.  A court may order the remedial sanction of coercive imprisonment upon a finding of contempt of a prior order.  M.R. Civ. P. 66(d)(3)(A).  However, Rule 66 does not permit coercive imprisonment absent such a finding. *Splude v. Dugan*, 2003 ME 88, ¶ 9, 828 A.2d 772.  Thus,

> [f]ailure to pay [a] compensatory fine . . . cannot be the basis of coercive imprisonment unless and until there is a separate finding by the court, after notice to the defendant, that (1) the defendant has failed or refused to pay the [fine], and (2) it is within the defendant's power to do so.

*Id.*

[¶21]  Because the court did not err in concluding that Anthony was in contempt of the modified divorce judgment because of his $26,937 in support arrearages and failure to move to modify his child support obligation, it did not err in ordering his coercive imprisonment based on that contempt.  *See* M.R. Civ. P. 66(d).  However, Anthony's coercive imprisonment cannot be made

conditional upon his payment of the entire $46,272.45, because that sum includes amounts Anthony owes for a compensatory fine and newly imposed attorney fees, which the court could not enforce by coercive imprisonment absent a new contempt proceeding for nonpayment. *See Splude*, 2003 ME 88, ¶ 9, 828 A.2d 772; M.R. Civ. P. 66(d). Such a contempt proceeding cannot be initiated until the person ordered to pay a newly imposed compensatory fine and attorney fees has been given a reasonable time to comply.

[¶22] We therefore conclude that the court erred by ordering Anthony's imprisonment if he failed to purge his contempt by paying $46,272.45 within sixty days. The judgment must be revised to permit Anthony to purge his contempt by paying $26,937 in support arrearages. In view of the passage of time and the significant amount of money that Anthony owes, the court may permit the parties to present additional evidence so that the court can consider Anthony's present circumstances in fashioning the terms for its order of coercive imprisonment. *See* M.R. Civ. P. 66(d)(2)(D), (3)(A); *see also Efstathiou*, 2009 ME 107, ¶ 16, 982 A.2d 339.

The entry is:

> Judgment vacated as to coercive imprisonment and remanded for further proceedings consistent with this opinion. Judgment affirmed in all other respects.

**On the briefs:**

Frayla A. Schoenfeld, Esq., Law Office of Frayla A. Schoenfeld, Windham, for appellant Anthony Dostanko

Gregory O. McCullough, Esq., Sanford, for appellee Ceron Dostanko

Springvale District Court docket number FM-2008-94
FOR CLERK REFERENCE ONLY