MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 101
Docket:        Pen-16-443
Submitted
 on Briefs:    April 27, 2017
Decided:       May 23, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

NICKY PYLE

v.

ROBERT PYLE

JABAR, J.

[¶1]  Robert Pyle appeals from a judgment of the District Court (Bangor, *Larson, J.*) awarding child support and primary residence of the parties' children to his former spouse, Nicky Pyle.  Robert contends on appeal that the court erred in two ways: first, by awarding primary residence of the children to Nicky, and second, by incorrectly calculating Robert's child support obligation.  We disagree with his first contention and therefore affirm in part, but agree that the court committed clear error in its factual findings regarding the calculation of Robert's obligation to pay for the children's health insurance, and we vacate that portion of the judgment related to the health insurance component of Robert's child support obligation.

## I.  BACKGROUND

[¶2]  The following factual findings are supported by the record.  *See Robertson v. Gerakaris*, 2015 ME 83, ¶ 2, 119 A.3d 739.  Nicky and Robert Pyle were married on September 5, 2003.  They have two children, aged 7 and 11.  Nicky has worked for sixteen years as a computed tomography scan technician.  Robert is employed as a scrub technician and, for about three years, has also operated a landscaping business.

[¶3]  In December 2015, Nicky filed for divorce, citing irreconcilable differences.  She and Robert agreed to and the court (*Campbell, J.*) entered a stipulated interim order, which established that the children would reside primarily with Nicky, that Nicky and Robert would share parental rights and responsibilities, and that Robert would pay $212.23 as child support and $98.60 as interim spousal support each week.  Robert filed an answer and counterclaimed for divorce in January 2016.  A mediation held on February 4, 2016, failed to resolve all of the issues between the parties.

[¶4]  After a hearing on June 29, 2016, the court (*Larson, J.*) entered a divorce judgment.  The court found that Nicky has been the primary caretaker of the children, and that she has been primarily responsible for providing for their basic needs, such as feeding, bathing, religious education, arranging and

attending healthcare appointments, and arranging and attending parent-teacher conferences. The court found that Nicky "is far more aware and involved" in the older child's special needs, including extensive health issues related to allergies, and mental health concerns stemming from his anxiety about his allergies. The court emphasized that Robert's two jobs "will make it difficult for him to share equally in caring for the children." Therefore, after considering the "best interest" standard pursuant to 19-A M.R.S. § 1653 (2016), the court concluded that the contact schedule already in place had been working well and that primary residence should remain with Nicky.

[¶5] The divorce judgment also incorporated a child support order requiring that Robert pay $475.36 each week in child support, including $61.36 weekly for health insurance. The court found that Robert's financial disclosures, which were based on his 2015 tax returns, had understated income from his landscaping business, and thus calculated the child support payments on the basis of income extrapolated from deposits to Robert's business bank account rather than the income shown on his tax return.

[¶6] Robert now timely appeals the court's judgment. *See* M.R. App. P. 2(b)(3).

## II. DISCUSSION

A.      Primary Residence

[¶7]   Robert contends that the court erred in finding that Nicky had been primarily responsible for all basic needs of the children and therefore abused its discretion in awarding her primary custody.  In an appeal from a divorce judgment establishing parental rights and responsibilities, we review a court's factual findings for clear error and its ultimate conclusion regarding the child's best interest for an abuse of discretion.  *See Smith v. Padolko*, 2008 ME 56, ¶¶ 9, 14, 955 A.2d 740.  The trial court's judgment is entitled to substantial deference because the trial court "is in a superior position to judge the credibility of the witnesses."  *Id.* ¶ 14.  Despite Robert's contentions, we discern no error in the court's factual findings and no abuse of discretion in its award of primary custody to Nicky.

[¶8]   At the June 29 hearing, Nicky testified that she arranged and attended all doctors' appointments for the children, and that she was the only parent to attend counseling sessions for the older child to address mental health concerns surrounding his severe allergies.  She and Robert disagreed about who had picked the children up more from school, but Nicky testified and Robert did not dispute that she had done most of the cooking.  Nicky

acknowledged that Robert had consistently attended sports practices with the children, but both Robert and Nicky testified that his two jobs kept him away from home on nights and weekends in the summer. This testimony supports the court's findings of fact, including that Nicky "has been the primary caretaker of the minor children."

[¶9] In addition, the court stated that it "carefully considered the evidence presented at trial in conjunction with all of the factors comprising" the "best interest" standard. *See* 19-A M.R.S. § 1653(3). Although the court did not specify which "best interest" factors upon which it based its decision, the court's findings of fact imply reliance on particular factors, such as the children's relationship with their parents, the duration and adequacy of current living arrangements, the stability of proposed living arrangements, and the capacity of each parent to allow frequent and continuing contact between the children and the other parent, among other factors. 19-A M.R.S. § 1653(3)(B), (D), (E), (H), (N). The court also found that Robert lacked credibility; it believed he was seeking to obtain primary residence of the children so that he could exaggerate his financial hardships and thereby avoid child support payments. The court therefore did not abuse its discretion in

awarding primary residence of the children to Nicky, and we affirm that portion of the court's order.

B.    Child Support

[¶10]  Robert next contends that the court erred in calculating his child support obligation by (1) incorrectly calculating the gross income from his landscaping business and (2) incorporating a health insurance expense that was not supported by evidence in the record.  We review the trial court's award of child support for an abuse of discretion and the factual findings underlying the award for clear error.  *Foley v. Ziegler*, 2007 ME 127, ¶ 8, 931 A.2d 498.

1.    Income Calculation

[¶11]   The trial court must assess both parties' gross incomes when calculating a child support entitlement.  19-A M.R.S. § 2006(1) (2016).  "Gross income includes income from an ongoing source, including . . . wages [and] commissions . . . ."  19-A M.R.S. § 2001(5)(A) (2016).  To arrive at the gross income for a child support order when a party is self-employed, the court calculates "gross receipts minus ordinary and necessary expenses."  *Id.* § 2001(5)(C) (2016).

[¶12]  Although Robert's 2015 tax return listed gross receipts of only $11,764 by his business, at trial he admitted that the bank account he uses solely for the business showed total deposits of $18,538.48 between May and October of 2015.  Robert acknowledged that the deposits to that account constituted the gross receipts of his business.  His testimony supports the court's finding that Robert's tax return misrepresented the earnings from his landscaping business, and its finding that his gross income from the business for child support calculation purposes—gross receipts less business expenses indicated by the tax return—was in fact close to $12,000, rather than the $6,615 as he had represented.  The court therefore did not commit clear error or an abuse of discretion in calculating Robert's gross income.

2.    Health Insurance Cost

[¶13]  The child support obligation that the court calculated included $30.68 per child per week for health insurance payments, for a total of $61.36 per week for health insurance.  These amounts are identical to the amounts advanced in Nicky's proposed child support order, but do not match the amounts described in the evidence, including Nicky's financial or child support disclosures, or shown on her paystubs.  Nicky's child support affidavit

listed a cost of $43.71 weekly, whereas her paystub indicated that $69.69 was withheld from her biweekly paycheck for health insurance coverage.

[¶14]  At the hearing, Nicky could not recall whether the money deducted from her biweekly pay for health insurance included coverage for both her and the children, and if so, what portion of it represented the children's health insurance coverage.  Following the hearing, the court asked Nicky to provide clearer evidence of the amount she pays for health insurance for the children, but the record is unclear as to whether she did so prior to submitting the proposed child support order.

[¶15]  The court's inclusion of $30.68 per child per week for health insurance costs in Robert's child support obligation is not supported by the testimony presented at the hearing or the parties' financial disclosures and affidavits.  It is unclear how the court calculated this figure.  We therefore hold that the court's inclusion for the children's health insurance coverage of $61.36 per week, or $30.68 per child per week, without additional evidence supporting that sum, was clear error.

The entry is:

> Judgment vacated as to the child support obligation, and affirmed in all other respects. The case is remanded for the court to determine

the correct amount of Robert's obligation to pay
the children's health insurance costs.

---

Zachary Brandmeir, Esq., Bangor, for appellant Robert Pyle

Anthony A. Trask, Esq., and Kristy M. Hapworth, Esq., Rudman Winchell, Bangor, for appellee Nicky Pyle

Bangor District Court docket number FM-2015-614
FOR CLERK REFERENCE ONLY